IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER K.,[1] | : | Case No. 3:20-cv-00334 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in February 2017. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 12), Plaintiff's Reply (Doc. 13), and the administrative record (Doc. 9).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since July 1, 2012. At forty years old, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9, PageID 62-80), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 12), and Plaintiff's Reply (Doc. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date.

Step 2: She has the severe impairments of degenerative disc disease, fibromyalgia, osteoarthritis, obesity, narcolepsy, and gastroesophageal reflux disease (GERD).

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR § 404.1567(a), subject to the following limitations: "(1) occasionally pushing and/or pulling with the lower left extremity; (2) never climbing ladders, ropes, or scaffolds; (3) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (4) occasionally reaching overhead bilaterally; (5) avoid concentrated exposure to extreme cold, extreme heat, wetness,

4

>> humidity, dust, odors, fumes, and pulmonary irritants; (6) avoid exposure to unprotected heights and dangerous machinery."
>
>> She is capable of performing past relevant work as a clinical counselor, case manager, social worker supervisor, and director social services.
>
> Step 5: In the alternative, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 9-2, PageID 66-80.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 80.)

## V. ANALYSIS

Plaintiff alleges one error: namely, that the ALJ failed to account for Plaintiff's narcolepsy in the RFC or to explain the reasons why no limitations were included in the RFC. (Doc. 11, PageID 1695.) Plaintiff contends that the ALJ "essentially ignored the affect [sic] that Plaintiff's well-documented narcolepsy would have on her ability to maintain employment." (*Id.*) This argument is not persuasive. For the reasons discussed below, the ALJ's RFC accounts for narcolepsy and is supported by substantial evidence.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) ("the [ALJ] . . . is responsible for assessing your [RFC]"); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and

the claimant's testimony to form an 'assessment of [her] [RFC]'"). The Commissioner determines a claimant's RFC based on relevant evidence in the record, including objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Plaintiff contends that the ALJ did not include any limitations in the RFC to account for the severe impairment of narcolepsy. (Doc. 11, PageID 1695.) She asserts: "when discussing how the ALJ arrived at the RFC he settled upon . . . the ALJ never even mentions Plaintiff's narcolepsy, let alone how it was accounted for in the RFC used at steps four and five." (Doc. 11, PageID 1697.) This assertion is not well-taken.

This Court may consider the ALJ's evaluation of the evidence at other steps of the decision to determine how to "credit the evidence at issue in this appeal." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 435 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (finding that the ALJ appropriately considered a claimant's combined impairments at step three in part because he "described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings")). In this case, the ALJ evaluated the medical evidence related to Plaintiff's narcolepsy, as well as the evidence related to Plaintiff's other severe and non-severe impairments, at Step Two. (Doc. 9-2, PageID 66-72.) This Court will consider the ALJ's evaluation of narcolepsy at Step Two when evaluating Plaintiff's assignment of error.

6

The ALJ acknowledged Plaintiff's subjective complaints related to narcolepsy. (Doc. 9-2, PageID 65.) He acknowledged Plaintiff's testimony that she experienced "chronic fatigue due to narcolepsy" and that "there are times she sleeps excessively." (*Id.*) The ALJ also cited Plaintiff's testimony that she "naps as often as she can, approximately one to [three] naps per day for 20 minutes to 2 hours." (*Id.*) The ALJ then summarized the medical records that documented Plaintiff's treatment for a sleep disorder at Step Two. (*Id.* at PageID 66.) He cited to the 2015 sleep studies, as well as the prescriptions for medication and a CPAP machine. (*Id.*) The ALJ acknowledged that Plaintiff initially required adjustments to her CPAP machine and medications, but noted that she reported improved wakefulness in August 2016. (*Id.*) The ALJ further found that Plaintiff continued to do "well" with her medication regimen for narcolepsy. (*Id.*)

The ALJ supported his findings by citing to records from Plaintiff's primary care provider that indicate Plaintiff was "doing well" with medication for narcolepsy, with no side effects. (*Id.*, citing Doc. 9-9, PageID 986, 1055.) The ALJ's conclusion is consistent with later records from this provider, which show that Plaintiff reported no specific complaints of daytime sleepiness and that the provider made no changes to Plaintiff's narcolepsy medication dosage. (Doc. 9-10, PageID 1192, 1204, 1220, 1238 1247 1270, 1291, 1326; Doc. 9-11, PageID 1413, 1422.) The ALJ also noted that Plaintiff's subsequent (and short-term) complaints of fatigue were related to gastric bypass surgery, rather than a sleep disorder. (Doc. 9-2, PageID 67.)

The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (Doc. 9-2, PageID 77.) The Court concludes that the ALJ's finding

is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. The Court cannot determine whether the evidence might support a different result. *Id.*

In addition, the Court finds that the ALJ adequately accounted for the evidence regarding Plaintiff's narcolepsy and other impairments by limiting Plaintiff to the reduced range of sedentary work in the RFC. (Doc. 9-2, PageID 74.)

Plaintiff argues that "the ALJ considered only purely exertional limitations when determining the RFC." (Doc. 11, PageID 1698.) This argument is not well-taken, as the RFC contains a range of postural, manipulative, and environmental limitations in addition to the sedentary exertional limitations. (Doc. 9-2, PageID 74.)

Alternatively, Plaintiff argues that the postural and exertional limitations in the RFC cannot account for Plaintiff's narcolepsy because they "were present in a prior RFC, used during the adjudication of a prior unfavorable decision, when narcolepsy was not considered a severe impairment." (Doc. 13, PageID 1715-16.) This argument is unpersuasive. Nothing in the regulations requires an RFC limitation to address only one impairment. The postural and environmental limitations in the prior ALJ's RFC, which accounted for degenerative disc disease, fibromyalgia, osteoarthritis, and obesity (Doc. 9-3, PageID 133, 138), can also account for narcolepsy. This is especially true given the fact that Plaintiff's narcolepsy was under good control with medication, and given the absence of significant or consistent subjective complaints of narcolepsy-related daytime sleepiness. Plaintiff does not cite to any evidence in the record that would warrant additional RFC limitations.

In sum, substantial evidence supports the ALJ's RFC, and the ALJ did not err by failing to include additional limitations in the RFC to further account for narcolepsy. Plaintiff's assertions to the contrary are without merit and are overruled.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 11) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

    */s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge